UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VANESSA WEISS,

        Plaintiff,

  – against –

PREMIER TECHNOLOGIES and
AT&T CORPORATION,

        Defendants.

21 CV 4648 (JPO)

# Plaintiff's Memorandum of Law
# in Opposition to
# Defendants' Motion To Transfer Venue
# and To Dismiss All Claims Against AT&T

GODDARD LAW PLLC
39 Broadway, Suite 1540
New York, NY 10006
(646) 504-8363

November 8, 2021

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......................................................................................... ii

STATEMENT OF FACTS ............................................................................................ 1

ARGUMENT ............................................................................................................. 1

I.    The Court Should Honor Plaintiff's Choice of Venue ............................................. 1

II.   Plaintiff's Title VII Claims Against AT&T Should Not Be Dismissed at
      the Pleading Stage ............................................................................................... 3

      A.    The Standards for Employer Status ............................................................... 3

      B.    Plaintiff Has Not Limited Her Allegations Against AT&T to a
            Particular Theory of Employer Status ............................................................ 6

      C.    The Evidentiary Basis Normally Required for a Determination of
            Employer Status ........................................................................................... 6

      D.    The Cases Cited by Defendants .................................................................... 8

      E.    Plaintiff's Allegations in the Amended Complaint ......................................... 10

      F.    Additional Information Concerning AT&T's Employer Status .................... 12

      G.    AT&T's Potential Liability for Discrimination ........................................... 14

      H.    Defendants' Submission of Documentary Evidence on This Motion
            Was Improper and Should Be Disregarded .................................................. 15

III.  Plaintiff's NYSHRL Claims Against AT&T Should Not Be Dismissed at
      the Pleading Stage .............................................................................................. 15

CONCLUSION ........................................................................................................... 19

# TABLE OF AUTHORITIES

Page

## <u>Cases</u>

Albert v. Carovano, 851 F.2d 561 (2d Cir.1988) ............................................................. 18

Albunio v. City of New York, 16 N.Y.3d 472 (N.Y. 2011) ............................................. 16

Arculeo v. On-Site Sales & Marketing, LLC, 425 F.3d 193 (2d Cir. 2005) .................. 3, 5

Barbosa v. Continuum Health Partners, Inc., 716 F. Supp. 2d 210 (S.D.N.Y. 2010) (Scheindlin, J.) ............................................................................................ 7, 8, 13

Brown v. Daikin America Inc., 756 F.3d 219 (2d Cir. 2014) ................................... passim

Caville v. Malibu Toys, Inc., 2004 WL 1516799 (S.D.N.Y. July 7, 2004) (Scheindlin, J.) ................................................................................................................ 1

Chambers v. Time Warner, Inc., 282 F.3d 147 (2d Cir. 2002) ........................................ 15

Clinton's Ditch Co-op, Inc. v. N.L.R.B., 778 F.2d 132 (2d Cir. 1985), cert. denied 479 U.S. 814 (1986) ........................................................................................ 5, 6

Dias v. Community Action Project, Inc., 2009 WL 565601, *5 (E.D.N.Y. Mar. 6, 2009) ................................................................................................................................ 7

Doran v. Ives, 2021 WL 1614368 (S.D.N.Y. Apr. 26, 2021) (Castel, J.) ........................ 17

Dupree v. Urban Homesteading Assistance Bd., 2011 WL 1343163 (E.D.N.Y. Apr. 8, 2011) ................................................................................................................ 3, 7

Golden Horn Shipping Co. Ltd. v. Volans Shipping Co. Ltd., 2017 WL 3535002 (S.D.N.Y. Aug. 16, 2017) (Oetken, J.) ........................................................................... 1

Griffin v. Sirva Inc., 29 N.Y.3d 174, 187 (N.Y. 2017) ("Griffin II") .............................. 16

Griffin v. Sirva, Inc., 835 F.3d 283 (2d Cir. 2016) ("Griffin I") ......................... 3, 4, 5, 15

Griffith v. Coney Food Corp., 2020 WL 4748452 (E.D.N.Y. Aug. 17, 2020) .......... 16, 17

Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947) ............................................................... 1

Gulino v. N.Y.S. Education Dept., 460 F.3d 361 (2d Cir. 2006) ....................................... 3

Hassanein v. Gino's Italian Rest. on 5th, 2017 WL 4350515 (E.D.N.Y. Mar. 27, 2017) ................................................................................................................................ 6

In re Domino's Pizza, Inc., 2018 WL 4757944 (S.D.N.Y. Sep. 30, 2018)
(Nathan, J.)..................................................................................................... 8

Iragorri v. United Technologies Corp., 274 F.3d 65 (2d Cir. 2001) ................................... 1

Kearney v. Kessler Family LLC, 2011 WL 2693892 (W.D.N.Y. July 11, 2011) .......... 8, 9

Laurin v. Pokoik, 2004 WL 513999 (S.D.N.Y. Mar. 15, 2004) (McKenna, J.) ..... 4, 11, 13

Lima v. Addeco, 634 F. Supp. 2d 394 (S.D.N.Y. 2009) (Chin, J.)........................... 3, 5, 14

Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268 (2d Cir. 2009) ................................ 16

Maher v. Alliance Mortg. Banking Corp., 650 F. Supp. 2d 249 (E.D.N.Y. 2009)........... 18

Marbury Mgmt., Inc. v. Kohn, 629 F.2d 705 (2d Cir.1980)............................................. 18

McHenry v. Fox News Network, LLC, 510 F. Supp. 3d 51 (S.D.N.Y. 2020)
(Engelmayer, J.) ............................................................................................... 17

Popat v. Levy, 253 F. Supp. 3d 527 (W.D.N.Y. 2017)........................................ 8, 9, 13, 15

Rivers v. Intl. House of Pancakes, 2021 WL 860590 (S.D.N.Y. Mar. 8, 2021)
(Oetken, J.)................................................................................................ passim

Secka v. Dentserve Management Services, Inc., 2013 WL 563364 (S.D.N.Y.
Feb. 11, 2013) (Briccetti, J.) ............................................................................. 7

Shifflett v. Scores Holding Co., Inc., 601 Fed. Appx. 28 (2d Cir. 2015) .......................... 5

St. Jean v. Orient-Express Hotels Inc., 963 F. Supp. 2d 301 (S.D.N.Y. Aug. 7,
2013) (Sweet, J.) .......................................................................................... 5, 8

Syeed v. Bloomberg L.P., --- F. Supp. 3d ---, 2021 WL 4952486 (S.D.N.Y. Oct.
25, 2021) (Woods, J.)...................................................................................... 17

Wellner v. Montefiore Medical Center, 2019 WL 4081898 (S.D.N.Y. Aug. 29,
2019) (Failla, J.) ............................................................................................ 17

Yousef v. Al Jazeera Media Network, 2018 WL 6332904 (S.D.N.Y. Oct. 31,
2018) (McMahon, J.) ....................................................................................... 6

## **Statutes**

N.Y. Exec. Law § 300................................................................................................. 16, 17

N.Y.C. Admin. Code § 8-130 ......................................................................................... 16

## <u>Other Authorities</u>

Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85 .......................... 18

## STATEMENT OF FACTS

For a statement of the relevant facts, the Court is respectfully referred to the allegations in Plaintiff's Amended Complaint (hereinafter "Am. Compl."), which must be accepted as true on a motion to dismiss.

## ARGUMENT

### I.     THE COURT SHOULD HONOR PLAINTIFF'S CHOICE OF VENUE

"[A] court should not disturb a plaintiff's choice of forum unless the balance of the factors weighs strongly in favor of transfer." *Caville v. Malibu Toys, Inc.*, 2004 WL 1516799, *2 (S.D.N.Y. July 7, 2004) (Scheindlin, J.) (internal quotation marks and citation omitted).  " '[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.' " *Golden Horn Shipping Co. Ltd. v. Volans Shipping Co. Ltd.*, 2017 WL 3535002, *2 (S.D.N.Y. Aug. 16, 2017) (Oetken, J.), *quoting Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

> The more it appears that a . . . plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's choice. . . . It would make little sense to withhold deference for the plaintiff's choice merely because she did not sue in her home district.  Where a U.S. resident leaves her home district to sue the defendant where the defendant has established itself and is thus amenable to suit, this would not ordinarily indicate a choice motivated by desire to impose tactical disadvantage on the defendant.

*Iragorri v. United Technologies Corp.*, 274 F.3d 65, 71-73 (2d Cir. 2001).

Here, Defendants assert – without any basis or knowledge – that the location of Plaintiff's attorneys' office is the "only" reason for Plaintiff's choice of this district.  It is not.  Plaintiff, a former and likely future resident of this district, and a regular visitor to this district, chose this district with her personal connections to this district in mind.

1

Furthermore, Defendants neglect to mention that Defendant AT&T is a resident of this district, and Plaintiff's choice of venue is grounded in that fact.  Thus, unless the Court dismisses Defendant AT&T from this case, the Court should analyze this branch of the motion no further and deny Defendants' request.

Even if the Court were to dismiss AT&T from this case, it does not follow that Defendants' choice of the Western District of New York should therefore be honored.  On the contrary, the Court should still give primary weight to the Plaintiff's **second** choice of venue.  Thus, Plaintiff respectfully requests, in the event the Court should dismiss AT&T from the case, that the case be transferred to the Northern District of New York as her second choice.  As Premier Technologies' chief financial officer acknowledges on this motion, "all documents and information relevant to this matter are contained at Premier's headquarters in Manlius, New York."  (Decl. of Alex Mueller, ¶ 16, ECF Doc. 25).  Manlius is located in Onondaga County, which is within the Northern District of New York.  Thus, Plaintiff's second choice of venue is fully justified under the Federal Rules of Civil Procedure.

Finally, Plaintiff is willing to stipulate that depositions of all witnesses in this case will be taken remotely, if the Court deems that appropriate in order to honor her first or second choice of venue.

The Court should deny the motion to transfer this action to the Western District of New York.

II.    **Plaintiff's Title VII Claims Against AT&T Should Not Be Dismissed at the Pleading Stage**

A.    **The Standards for Employer Status**

The definition of "employer" for Title VII purposes is "construed liberally,"  and viewed "functionally, to encompass persons who are not employers in a conventional terms, but who nevertheless control some aspect of an employee's compensation or terms, conditions, or privileges of employment" or "access to employment opportunities." *Lima v. Addeco*, 634 F. Supp. 2d 394, 399 (S.D.N.Y. 2009) (Chin, J.) (internal quotation marks and citations omitted) (finding issues of fact as to Adecco's employer status, but granting summary judgment on other grounds).

Two doctrines – the joint employer doctrine and the single employer (or integrated enterprise) doctrine – "have been developed to allow a plaintiff to assert employer liability in the employment discrimination context against entities that are not her formal, direct employer." *Griffin v. Sirva, Inc.,* 835 F.3d 283, 292 (2d Cir. 2016) ("*Griffin* I") (internal quotation marks and citation omitted).  However, the two doctrines are related.  "The labeling can be deceptive because the terms are used in numerous contexts" and "the doctrines might differ significantly in different contexts." *Arculeo v. On-Site Sales & Marketing, LLC*, 425 F.3d 193, 197 (2d Cir. 2005).  Indeed, as used in Title VII jurisprudence, the doctrines grew out of a single test – the " 'single or joint employment' test," which the Second Circuit has on more than one occasion applied as a single test in the Title VII context. *Gulino v. N.Y.S. Education Dept.*, 460 F.3d 361, 378 (2d Cir. 2006); *see Dupree v. Urban Homesteading Assistance Bd.*, 2011 WL 1343163, *6 n. 9 (E.D.N.Y. Apr. 8, 2011) (opining that the court in *Gulino* appeared to treat the two doctrines as synonymous, and, after denying the motion to dismiss before it on a joint employer analysis, declining to address the question whether the plaintiff could invoke the single

3

employer doctrine on the motion as well); *see also Brown v. Daikin America Inc.*, 756 F.3d 219, 226 (2d Cir. 2014) (citing Second Circuit precedent and describing only one theory, that of integrated enterprise, to cover all instances where a plaintiff can prevail in an employment action against a defendant who is not her direct employer).  In any case, the joint employer and single employer inquiries are "similar" if not "identical" and rely on "similar factors."  *Laurin v. Pokoik*, 2004 WL 513999, *9 (S.D.N.Y. Mar. 15, 2004) (McKenna, J.) (denying summary judgment because fact issues remained as to whether a joint employer and/or a single employer relationship(s) existed).

The single employer or integrated enterprise doctrine is often applied to parent-subsidiary relationships and common ownership and management situations.  *See Brown*, 756 F.3d at 228 & n. 9.  Various types of evidence can show interrelatedness of operations and common management, two of the recognized factors that can justify a finding of an integrated enterprise; for example, when one entity provides work to the employees of another entity, or when one entity's employees coordinate or manage the work done by the other entity's employees, or when the work and activities of the employees of both entities are indistinguishable.  *See Laurin*, 2004 WL 513999 at *5-6.  Similarly, centralized control over labor operations can be shown when the two entities share employment applications with each other or shift employees back and forth, or when the employees must follow directions from both entities' employees.  *See id.* at *6-7.  Common management, in the absence of common ownership of the two entities, can be shown in a variety of ways as well.  *See id.* at *8.

The joint employer doctrine applies when separate legal entities "handle certain aspects of the employer-employee relationship jointly."  *Griffin* I, 835 F.3d at 292.  The Second Circuit has not yet fully analyzed or described a test for what constitutes joint

employment in the context of employment discrimination.  *See Shifflett v. Scores Holding Co., Inc.*, 601 Fed. Appx. 28, 30 (2d Cir. 2015).  Courts variously apply an "economic realities" test looking at "the circumstances of the whole activity" to assess an entity's relationship to a plaintiff's employment, or an "immediate control" test examining factors such as commonality of hiring, firing, discipline, pay, insurance, records, and supervision.  *See St. Jean v. Orient-Express Hotels Inc.*, 963 F. Supp. 2d 301, 308 (S.D.N.Y. Aug. 7, 2013) (Sweet, J.).  " 'The indicia suggesting a conclusion of joint employment may vary depending on the purpose of the inquiry.' "  *Id.* at 307, *quoting Arculeo*, 425 F.3d at 199 n. 7.

For example, "[a] joint employer relationship may be found to exist where there is sufficient evidence that the respondent had immediate control over the other company's employees" or where two entities "jointly exercise some control over the work or working conditions of the employee."  *Griffin* I, 835 F.3d at 293 (internal quotation marks and citations omitted).  Notably, a joint employer relationship may be found without any "unity of control" and without any "arm's length"-negotiated formal relationship.  *Clinton's Ditch Co-op, Inc. v. N.L.R.B.*, 778 F.2d 132, 137 (2d Cir. 1985), *cert. denied* 479 U.S. 814 (1986) (internal quotation marks and citation omitted).  Instead, "[t]he basis of the finding is simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer."  *Id.* at 138 (internal quotation marks and citation omitted).  The "key inquiry is whether [the] entity controls some aspect of [the] employee's work."  *Lima*, 634 F. Supp. 2d at 400 (internal quotation marks, citation, and alteration omitted).

**B.    Plaintiff Has Not Limited Her Allegations Against AT&T to a Particular Theory of Employer Status**

Contrary to a remark made in Defendants' moving memorandum of law, Plaintiff has not limited her allegations against AT&T to an exclusive theory of "joint employer." As described in the cases cited in the previous subsection, the standards and factors associated with the joint employer and single integrated employer doctrine are similar, fluid, and non-exclusive.  Although Plaintiff's Amended Complaint uses the term "joint employer," the Complaint is required to set forth the factual allegations underlying her causes of action rather than to specify all of the legal theories that might be available to her in proving her claims.  Plaintiff respectfully requests that the Court grant her leave to amend her Complaint if the Court deems further specificity in the Complaint of her legal theories to be necessary.

**C.    The Evidentiary Basis Normally Required for a Determination of Employer Status**

Most importantly of all, however, the determination of whether a particular entity can be held liable as an employer is nearly always made on summary judgment, and not on the pleadings.  "The existence of a joint employer relationship is 'essentially a factual issue' that cannot be resolved based on the complaint alone."  *Hassanein v. Gino's Italian Rest. on 5th*, 2017 WL 4350515, *7 (E.D.N.Y. Mar. 27, 2017), *quoting Clinton's Ditch Co-op*, 778 F.2d at 136.  "Whether two related entities are sufficiently integrated to be treated as a single employer is generally a question of fact not suitable to resolution on a motion to dismiss."  *Brown*, 756 F.3d at 226.  *See further Yousef v. Al Jazeera Media Network*, 2018 WL 6332904, *2 (S.D.N.Y. Oct. 31, 2018) (McMahon, J.) ("Whether [defendant] is liable under the joint employer doctrine requires a more fact-intensive inquiry.  I cannot resolve this question of fact here on a motion to dismiss."); *Secka v.*

*Dentserve Management Services, Inc.*, 2013 WL 563364, *3 (S.D.N.Y. Feb. 11, 2013) (Briccetti, J.) ("single-employer doctrine involves questions of fact not amenable to resolution on a motion to dismiss"); *Barbosa v. Continuum Health Partners, Inc.*, 716 F. Supp. 2d 210, 219 (S.D.N.Y. 2010) (Scheindlin, J.) (holding that although the plaintiff had "not pled extensive facts related to" the alleged joint employers' control of the employees, "defendants are far more likely to be in possession of those facts" than the plaintiff, entitling her to discovery on that issue); *Dias v. Community Action Project, Inc.*, 2009 WL 565601, *5, 7 (E.D.N.Y. Mar. 6, 2009) (allowing discovery to proceed on the issues of single or joint employer status, and "declin[ing] to rule that the existence of a formal parent-subsidiary relationship or a subcontract is a legal prerequisite to single or joint employment").

Seven of the ten cases cited in the preceding subsection of this memorandum of law (including five of the six Court of Appeals cases cited) were summary judgment decisions or post-trial appeals.  Additionally, in *Brown*, the Second Circuit reversed the district court's dismissal on the pleadings of the employment discrimination claims against both defendants.

The court in *Brown* "recogniz[ed] that Brown does not plead facts suggesting that [the alleged joint employer] had significant responsibility for other aspects of [the primary employer]'s labor relations" such as hiring or firing decisions, "[n]or, for that matter, does he allege common management," but the court held that the allegations nevertheless were sufficient to sustain claims of interrelated operations and centralized control of labor relations necessary for a finding of employer status.  756 F.3d at 228.

The two district court cases cited in the preceding subsection of this memorandum of law that rendered decisions on motions to dismiss on the pleadings (*Dupree* and *St.*

*Jean*) denied those motions.  *See St. Jean*, 963 F. Supp. 2d at 309 (noting that all of the authority cited by the defendants were summary judgment or post-trial decisions); *Dupree*, 2011 WL 1343163 at \*5-6 ("Yet this is not so simple an inquiry as Defendants suggest, and Defendants cannot escape liability purely because they did not hire Dupree in the first place and did not hand him his paychecks. . . . I am unwilling to foreclose such avenues [of establishing the defendants' employer status] to him as a matter of law at this stage without affording him the benefit of discovery.").

### D.      The Cases Cited by Defendants

Aside from their citation of cases setting forth applicable standards, Defendants in their moving brief cite exactly four judicial decisions (*Rivers*, *Domino's Pizza*, *Popat*, and *Kearney*) to support their argument that Plaintiff's claims against AT&T should be dismissed on the pleadings because of insufficient allegations that AT&T may qualify as Plaintiff's employer for Title VII purposes.  None of those decisions justifies the departure that Defendants ask the Court to make from the established principle that employer status is a question for summary judgment instead of decision on the pleadings.

One of the four decisions cited by Defendants, *In re Domino's Pizza, Inc.*, was in fact a summary judgment decision, and for that reason does not support Defendants' request that the Court dismiss AT&T from the instant action based on the pleadings.  *See* 2018 WL 4757944, \*1 (S.D.N.Y. Sep. 30, 2018) (Nathan, J.) (granting motion for summary judgment and denying motions to enforce judgment and to compel arbitration).

A second case cited by Defendants, *Popat*, took pains to emphasize that the court was departing from the established principle to dismiss on the pleadings.  First, the court set forth the principle that employer status is not generally suitable for treatment on a motion to dismiss, citing *Brown*, *Barbosa*, and other cases.  *See Popat v. Levy*, 253 F.

Supp. 3d 527, 538 (W.D.N.Y. 2017). Then, after discussing the plaintiff's allegations, the court held that the "Plaintiff's Title VII claims against [the alleged employer] fail for the basic reason that the amended complaint lacks *any* factual allegations about the degree to which [the alleged employer] played a role in any aspect of his employment or shared employment decisions with the [other defendants]." *Id.* (emphasis in original). This complete lack of factual allegations supporting the alleged employer status make *Popat* inapposite for the Court's consideration of the instant motion by AT&T; see discussion of Plaintiff's allegations concerning AT&T, below. Nevertheless, in *Popat*, the court returned once again to the principle that joint or single employer allegations should not be dismissed on the pleadings in the conclusion of its opinion dismissing the claims, when it stated, "However, in light of the Second Circuit's caution that whether an entity is a covered employer under Title VII is generally a fact-based question, *Brown*, 756 F.3d at 226, the Court finds it appropriate to dismiss these claims without prejudice to re-pleading." *Popat*, 253 F. Supp. 3d at 540.

Once again, in the third case cited by Defendants, *Kearney v. Kessler Family LLC*, 2011 WL 2693892 (W.D.N.Y. July 11, 2011), the court emphasized that the plaintiff had made *no* specific factual allegations concerning the employer status of Friendly's beyond identifying that it held a franchise relationship with the primary employer, and the purely conclusory statements that Friendly's exercised control over the plaintiff and the plaintiff took direction from Friendly's. *See id.* at *3, 5. Again, the complete lack of factual allegations supporting the alleged employer status makes *Kearney* inapposite for the Court's consideration of the instant motion by AT&T.

That leaves exactly one decision cited by Defendants to support their request for dismissal of AT&T on the pleadings – Judge Oetken's decision from earlier this year in

*Rivers v. Intl. House of Pancakes*, 2021 WL 860590 (S.D.N.Y. Mar. 8, 2021).  In *Rivers*, Judge Oetken noted that although the determination of employer status of franchisors has been made after discovery on motions for summary judgment, his decision was one in a line of cases where "the allegations in the complaint were so sparse as to warrant dismissal."  *Id.* at *3.  Judge Oetken discussed a number of types of factual allegations that were ***missing*** from Rivers's complaint (control of work schedules, supervision of work conditions beyond semi-annual inspections, influence of wages, maintenance of employment records, control over recordkeeping).  *See id.* at *3.  Here, the Plaintiff has alleged more, as discussed in subsection D below, and is in possession of still further factual information that the Court should consider on this motion (or in granting her leave to amend her Complaint), as discussed in subsections E and F below.

> E.     **Plaintiff's Allegations in the Amended Complaint**

Here, Plaintiff alleges that AT&T holds itself out as the operator of the stores where Plaintiff worked, and indeed that some of the stores which Premier Technologies operates identify themselves ***exclusively*** as AT&T stores.  (*See* Am. Compl. ¶¶ 7-9). Plaintiff alleges further that she was reviewed, supervised, and directed by employees of both AT&T and Premier Technologies, on a regular bi-weekly basis; that AT&T required the store to comply with AT&T standards and regularly reviewed paperwork; that AT&T worked together with Premier Technologies to secure important sales and contracts; that AT&T trained Plaintiff and other sales representatives and reviewed the results.  (*Id.* ¶¶ 11, 62, 63).  Contrary to Defendants' arguments, the Amended Complaint does not allege that Plaintiff has any knowledge of who employed her various supervisors, that is, whether they were employed by AT&T or Premier Technologies or both.  (*See, e.g.*, *id.* ¶¶ 25-26). Similarly, Plaintiff alleges that when she complained of transgender discrimination, the

Human Resources employee taking the information stated that she did not know "who is monitoring this [communication]" and broke off the communication to avoid exposing (unknown) defendants to liability.  (*Id.* ¶ 40-43).  Plaintiff's allegations also clearly suggest that Premier Technologies sells exclusively AT&T products and services, and it and AT&T regularly trade employees back and forth.  (*See, e.g.*, *id.* ¶¶ 21, 24, 33).  *See Brown*, 756 F.3d at 227 & n. 8 (employees assigned to work back and forth between two companies is evidence of interrelated operations and a single integrated enterprise); *Laurin*, 2004 WL 513999 at *6 (same).

These allegations, at this stage of the proceedings, suffice to put Defendants on notice that AT&T may be found to be a joint employer of Plaintiff or part of an integrated enterprise employing Plaintiff pursuant to the standards discussed above.

For example, unlike the semi-annual supervision of work conditions cited in *Rivers*, here, Plaintiff's work was supervised by AT&T's regional manager on a bi-weekly basis (*id.* ¶¶ 11, 62).  In his decision granting dismissal in *Rivers*, Judge Oetken placed emphasis on the plaintiff's allegations of only semi-annual inspections and noted that "[i]nfrequent inspections for the purpose of quality control have been recognized as insufficient to establish joint employer status."  2021 WL 860590 at *3.

Plaintiff's lack of specific factual knowledge about **who** monitored the Human Resources communications, together with her knowledge that the Human Resources employee who communicated with her was **concerned** about who in fact monitored the communication, should not be held against Plaintiff at this stage of the proceedings; on the contrary, these factual situations permit an inference of AT&T's involvement and, pursuant to the dominant case law discussed above,  should entitle Plaintiff to discovery of the extent of AT&T's involvement.

**F.**     **Additional Information Concerning AT&T's Employer Status**

Documentary evidence not cited in Plaintiff's Amended Complaint demonstrates further that AT&T maintained employment records and controlled Premier Technologies' recordkeeping, *see Rivers*, 2021 WL 860590 at *3, corroborates Plaintiff's allegations of frequent supervision and control by AT&T, and bolsters her suggestion that AT&T and Premier Technologies shared employees.

During the EEOC proceeding underlying this action, Defendant Premier Technologies submitted documentary evidence to the EEOC, including a three-page Coaching Action Plan pertaining to Plaintiff's discipline or performance evaluation.  The Coaching Action Plan ("CAP") is an AT&T form that identifies ***only*** AT&T and ***not*** Premier Technologies as the employer.  The CAP is labeled "AT&T Proprietary (Restricted) – Authorized Individuals only."  It states that it precedes "a formal Performance Improvement Plan," but at the same time appears to constitute all of the typical functions of what is commonly referred to in employment practices as a performance improvement plan, setting forth specific objectives and target dates to address the employee's alleged need to improve performance.  Further, the CAP appears to identify Plaintiff's supervisor, Court Sturdy, as an AT&T employee with an "ATTUID" number, presumably an abbreviation for Mr. Sturdy's "AT&T user identification number" used in recordkeeping and employment records.  (*See* Coaching Action Plan dated October 8, 2019, Exhibit 1 to accompanying Declaration of Anthony Consiglio).  The CAP document also directs that it is to be retained in the employee's personnel file for a period of 5 years, thus further establishing AT&T's control and Defendants' interrelated operations.

The CAP submitted to the EEOC by Premier Technologies is evidence of centralized control over labor relations, as it is evidence that will establish whether the two

Defendants here had separate human resources departments and separate policies concerning the discipline and performance evaluation of employees. *See Laurin*, 2004 WL 513999 at *6. The CAP is also evidence that AT&T exercised control of recordkeeping and maintenance of employment records. *See Rivers*, 2021 WL 860590 at *3.

Plaintiff respectfully requests that the Court deem the CAP to be incorporated into her allegations and/or grant her leave to amend her Complaint to add this information. *See Popat*, 253 F. Supp. 3d at 540 (allowing the plaintiff to further amend his previously amended complaint "in light of the Second Circuit's caution that whether an entity is a covered employer under Title VII is a fact-based question"). It is likely that Defendants possess additional evidence (like the CAP) of AT&T's control of recordkeeping, maintenance of employment records, or involvement in evaluation and discipline of Premier Technologies' sales representatives, which Plaintiff should be allowed an opportunity to discover. *See Barbosa*, 716 F. Supp. 2d at 219 & n. 68 (holding that "defendants are far more likely to be in possession of those facts" concerning the entities' respective control of employees, denying the defendants' motion to dismiss on the grounds that the alleged joint employers were not her employers, and directing that the defendants could renew that branch of their motion following the close of discovery).

In addition, at least one of the employees identified in Plaintiff's Amended Complaint as a Premier Technologies employee can be shown to be shifted between the two Defendants in this case. (*See* Consiglio Decl. and Exhibit 2 thereto.) *See Brown*, 756 F.3d at 227 n. 8 ("the very system of assigning employees from one company to work for a period of years at another company suggests a significant degree of interrelated operations"); *Laurin*, 2004 WL 513999 at *6 ("whether the entities shift employees back and forth" is evidence of centralized control over labor relations).

13

G.     **AT&T's Potential Liability for Discrimination**

At judgment or summary judgment, Plaintiff must establish not only that AT&T

was her employer, but also that "a reasonable jury could find [AT&T] liable for alleged

discrimination." *Lima*, 634 F. Supp. 2d at 401.  On their motion, Defendants argue that

Plaintiff has made no plausible allegations that AT&T can be held liability.  That argument

is misplaced, given that Plaintiff alleges that her complaint of discrimination was

redirected from the channel of communication with Human Resources that she selected,

because it was "monitored" by unknown persons or entities, as the Human Resources

employee told her.  (*See* Am. Compl. ¶ 42 and discussion above).  The obvious inference

here is that AT&T received at least part of the discrimination complaint made by Plaintiff

on the chat program that Plaintiff used.  Plaintiff should be permitted to find out in

discovery precisely what information AT&T received about her discrimination complaint.

In addition, however, new information came to Plaintiff's attention after she filed

her Amended Complaint on September 1, 2021.  On October 11, 2021, one of the store's

customers identified in the Amended Complaint (¶¶ 82-86) provided a sworn witness

statement attesting that she reported directly to AT&T the gender discrimination against

Plaintiff that she witnessed.  (*See* accompanying Declaration of Mary Honora McCormack,

¶ 10).

Plaintiff respectfully requests that the Court deem the information about Ms.

McCormack's complaint to AT&T to be incorporated into Plaintiff's allegations or, if

necessary, permit Plaintiff to amend her Complaint to add this information that only came

to light last month.  Crucially, though, again, this information should entitle Plaintiff to

discovery of the extent of AT&T's knowledge of the discrimination she suffered in an

AT&T store at the hands of her supervisor, and what actions, if any, were taken by AT&T

in response to that knowledge.  *See Popat*, 253 F. Supp. 3d at 540 (allowing the plaintiff to

further re-plead on the fact-based question of employer status).

>    **H.    Defendants' Submission of Documentary Evidence on This Motion Was
>           Improper and Should Be Disregarded**

The Court should disregard Defendants' submission of a sworn declaration from an

executive officer and two self-selected pages from a contract with Premier Technologies

on this motion (ECF Doc. 25).  In her Amended Complaint, Plaintiff does not rely on the

existence of such a contract for her allegations, and cannot be charged with notice of or

strategic avoidance of such a contract; Defendants improperly attempt to sway the Court

away from the well established standards for a motion to dismiss.  *See Chambers v. Time

Warner, Inc.*, 282 F.3d 147, 153-54 (2d Cir. 2002).

Indeed, the fact that Defendants here have self-servingly selected two pages out of

the improperly submitted contract – thus asking the Court to consider documents on

Defendants' terms alone – only further underscores Plaintiff's entitlement to discovery of

evidence concerning AT&T's employer status, based upon all of her factual allegations, as

discussed throughout this section II.

The Court should deny the motion to dismiss Plaintiff's Title VII claims against

AT&T.

**III.   PLAINTIFF'S NYSHRL CLAIMS AGAINST AT&T SHOULD NOT BE DISMISSED AT
        THE PLEADING STAGE**

Even if the Court were to dismiss Plaintiff's Title VII claims against AT&T, it

should not dismiss her New York State Human Rights Law ("NYSHRL") claims against

AT&T.  The standard for employer status under the NYSHRL is less clear, and, as

amended in 2019, more relaxed than under Title VII.  *See Griffin* I, 835 F.3d at 293

(whether the joint employer and/or single employer doctrines apply to NYSHRL remains

unresolved); *Griffith v. Coney Food Corp.*, 2020 WL 4748452, *3 & n. 3 (E.D.N.Y. Aug. 17, 2020) (granting dismissal of Title VII claims based on joint employer liability but denying dismissal of same claims under NYSHRL and NYCHRL); *Griffin v. Sirva Inc.*, 29 N.Y.3d 174, 187 (N.Y. 2017) ("*Griffin* II") (holding that the aiding and abetting provision of the NYSHRL "extends liability to persons and entities beyond joint employers, and this provision should be construed broadly").

First, as amended effective October 2019, the NYSHRL must "be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed.  Exceptions to and exemptions from the provisions of this article shall be construed narrowly in order to maximize deterrence of discriminatory conduct."  N.Y. Exec. Law § 300.  This language is comparable to the provisions of the Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85, which clarified the scope of the New York City Human Rights Law ("NYCHRL") by amending the NYCHRL, N.Y.C. Admin. Code § 8-130.  The NYSHRL now requires a separate analysis, for which courts should rely upon this statutory language to construe the NYSHRL more broadly and liberally and in a manner that is consistent with the construction of the NYCHRL, that is, "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible."  *Albunio v. City of New York*, 16 N.Y.3d 472, 477-78 (N.Y. 2011).  As the Second Circuit memorably explained this language after the amendment of the NYCHRL, "[t]here is now a one-way ratchet" by which the interpretations of federal statutes are now a " '***floor*** below which' " the NYSHRL now cannot fall.  *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009), *quoting* Local Civil Rights Restoration Act of 2005, § 1.

16

The 2019 amendments to the NYSHRL "direct courts to construe the NYSHRL, like the NYCHRL, 'liberally for the accomplishments of the remedial purposes thereof, regardless of whether federal civil rights laws including those with provisions worded comparably to the provisions of [the NYSHRL] have been so construed.' " *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (Engelmayer, J.), *quoting* N.Y. Exec. Law § 300, as amended; *see further Syeed v. Bloomberg L.P.*, --- F. Supp. 3d ---, 2021 WL 4952486, *18 (S.D.N.Y. Oct. 25, 2021) (Woods, J.); *Doran v. Ives*, 2021 WL 1614368, *6 n. 4 (S.D.N.Y. Apr. 26, 2021) (Castel, J.); *Wellner v. Montefiore Medical Center*, 2019 WL 4081898, *5 n. 4 (S.D.N.Y. Aug. 29, 2019) (Failla, J.) ("the effect of which [the 2019 amendments of the NYSHRL] is to render the standard for claims closer to the standard under the NYCHRL").

This principle applies to the issue before this Court of whether to allow Plaintiff's claims against AT&T to proceed to discovery as against an "employer." "Though the factors outlined by courts to determine joint employer status overlap as to federal and state claims, the court is mindful of its independent duty to liberally interpret the NYSHRL and the NYCHRL." *Griffith*, 2020 WL 4748452 at *3 n. 4, *citing* N.Y. Exec. Law § 300 as amended in 2019 (denying dismissal of NYSHRL and NYCHRL claims against an alleged joint employer). "These allegations are sufficient to defeat [the defendant's] motion at this stage of the litigation, especially in light of the fundamental factual nature of the joint employer inquiry and the liberal construction the court must afford Griffith's NYSHRL and NYCHRL claims." *Id.* at *3.

Second, aider and abettor liability under the NYSHRL does not require that the plaintiff plead an aiding and abetting cause of action; it requires only that a plaintiff plead the factual allegations that will establish that liability. *See Maher v. Alliance Mortg.*

*Banking Corp.*, 650 F. Supp. 2d 249, 260 n. 9 (E.D.N.Y. 2009).[1]  Here, the factual

allegations in the Amended Complaint, and the further factual information discussed in

section II, subsections (F) and (G) above, make clear the basis for AT&T's liability.

The Court should deny the motion to dismiss Plaintiff's NYSHRL claims against

AT&T.

---

[1] Footnote 9 in *Maher* reads, in full, as follows:  "In his opposition papers, Defendant concedes that an individual can be held liable pursuant to the NYSHRL § 296(6) as an aider and abettor, but argues that he is entitled to summary judgment because Plaintiff did not allege an aider or abettor theory in the Complaint. It is well-settled that as long as a complaint 'gives full notice of the circumstances giving rise to her claim for relief,' the complaint 'need not also correctly plead the legal theory or theories and statutory basis supporting the claim.'  *Marbury Mgmt., Inc. v. Kohn,* 629 F.2d 705, 712 n. 4 (2d Cir.1980); *see also Albert v. Carovano,* 851 F.2d 561, 571 n. 3 (2d Cir.1988) ("The failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters.").  Here, Plaintiff's Amended Complaint cites Executive Law § 290 *et seq.* and gives adequate notice that Plaintiff seeks to hold Agoglia individually liable under New York State law for subjecting her to an allegedly hostile work environment.  Accordingly, the Court declines to grant Defendant summary judgment on this basis."

## CONCLUSION

For all these reasons, the Court should deny Defendants' motion to dismiss Plaintiff's claims against AT&T, and their motion to transfer the case to the Western District of New York.

If the Court determines that Plaintiff's Title VII or NYSHRL claims against AT&T are subject to dismissal on this motion, Plaintiff respectfully requests leave to amend to correct the deficiencies in the interest of justice.

Dated:  November 8, 2021
        New York, New York

Respectfully submitted,

GODDARD LAW PLLC

By: _____
      Anthony P. Consiglio
39 Broadway, Suite 1540
New York, NY 10006
(646) 504-8363
anthony@goddardlawnyc.com
*Attorneys for Plaintiff Vanessa Weiss*

19